IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DOROTHY MACK o/b/o J.M., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:10CV627-MEF |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Dorothy Mack o/b/o J.M.[1] brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her son's application for Supplemental Security Income under the Social Security Act. Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

**STANDARD OF REVIEW**

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145

---

[1] The court refers to J.M. as the "plaintiff" in this memorandum of opinion.

(11th Cir. 1991). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). Factual findings that are supported by substantial evidence must be upheld by the court. See Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990)("Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence."). The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

### Child Disability

"Federal regulations set forth the process by which the SSA determines if a child is disabled and thereby eligible for disability benefits." Shinn ex rel. Shinn v. Commissioner of Social Sec., 391 F.3d 1276, 1278 (11th Cir. 2004) (citing 42 U.S.C. § 1382c(a)(3)(C)(I) and 20 C.F.R. § 416.906). "The process begins with the ALJ determining whether the child is 'doing substantial gainful activity,' in which case she is considered 'not disabled' and is ineligible for benefits." Id. (citing 20 C.F.R. §§ 416.924(a), (b)). "The next step is for the

ALJ to consider the child's 'physical or mental impairment(s)' to determine if she has 'an impairment or combination of impairments that is severe.'" Id. (citing 42 U.S.C. §§ 416.924(a), (c)). "For an applicant with a severe impairment, the ALJ next assesses whether the impairment 'causes marked and severe functional limitations' for the child." Shinn, 391 F.3d at 1278  (citing 20 C.F.R. §§ 416.911(b), 416.924(d).)  This determination is made according to objective criteria set forth in the Code of Federal Regulations (C.F.R.). As the Eleventh Circuit has explained,

> [t]he C.F.R. contains a Listing of Impairments ["the Listings", found at 20 C.F.R. § 404 app.] specifying almost every sort of medical problem ("impairment") from which a person can suffer, sorted into general categories. See id. § 416.925(a). For each impairment, the Listings discuss various limitations on a person's abilities that impairment may impose. Limitations appearing in these listings are considered "marked and severe." Id. ("The Listing of Impairments describes ... impairments for a child that cause[ ] marked and severe functional limitations.").
>
> A child's impairment is recognized as causing "marked and severe functional limitations" if those limitations "meet[ ], medically equal[ ], or functionally equal[ ] the [L]istings." Id. § 416.911(b)(1); see also §§ 416.902, 416.924(a). A child's limitations "meet" the limitations in the Listings if the child actually suffers from the limitations specified in the Listings for that child's severe impairment. A child's limitations "medically equal" the limitations in the Listings if the child's limitations "are at least of equal medical significance to those of a listed impairment." Id. § 416.926(a)(2).

Id. at 1278-79. "Finally, even if the limitations resulting from a child's particular impairment[s] are not comparable to those specified in the Listings, the ALJ can still conclude that those limitations are 'functionally equivalent' to those in the Listings. In making this determination, the ALJ assesses the degree to which the child's limitations

3

interfere with the child's normal life activities. The C.F.R. specifies six major domains of life:

> (i) Acquiring and using information;
>
> (ii) Attending and completing tasks;
>
> (iii) Interacting and relating with others;
>
> (iv) Moving about and manipulating objects;
>
> (v) Caring for [one]self; and
>
> (vi) Health and physical well-being."

Shinn, 391 F.3d at 1279 (citing 20 C.F.R. § 416.926a(b)(1)). "The C.F.R. contains various 'benchmarks' that children should have achieved by certain ages in each of these life domains." Id. (citing 20 C.F.R. §§ 416.926a(g)-(l)). "A child's impairment is 'of listing-level severity,' and so 'functionally equals the listings,' if as a result of the limitations stemming from that impairment the child has 'marked' limitations in two of the domains [above], or an 'extreme' limitation in one domain." Id. (citing 20 C.F.R. § 416.926a(d) and § 416.925(a)).[2]

## Background

Plaintiff's grandmother filed the present application for benefits in January 2006,

---

[2] " A 'marked' limitation is defined as a limitation that 'interferes seriously with [the] ability to independently initiate, sustain, or complete activities,' and is 'more than moderate.'" Henry v. Barnhart, 156 Fed.Appx. 171, 174 (11th Cir. 2005) (unpublished) (citing 20 C.F.R § 416.926a(e)(2)(I)). "An 'extreme' limitation is reserved for the 'worst limitations' and is defined as a limitation that 'interferes very seriously with [the] ability to independently initiate, sustain, or complete activities,' but 'does not necessarily mean a total lack or loss of ability to function.'" Id. (citing 20 C.F.R. § 416.926a(e)(3)(I)).

4

when plaintiff was ten years old, alleging disability since April 2005 due to "[s]eizures, migraines, allergies, sinus, slow learner, crying spells, emotional problems." (R. 85, 110, 133-40). Plaintiff's claim was denied at the initial administrative level on May 4, 2006, and his grandmother requested a hearing before an ALJ. (R. 57-64). In September 2006, plaintiff's mother appointed an attorney to represent her in her son's claim and, on March 11, 2008, an ALJ conducted an administrative hearing. (R. 65, 28-56).

The ALJ issued a decision on June 16, 2008. He concluded that plaintiff has severe impairments of sleep apnea and seizure disorder and a non-severe impairment of headaches. He found that plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20CFR Part 404, Subpart P, Appendix 1." (R. 16). He further determined that plaintiff has a marked limitation in the domain of health and physical well-being but "less than marked" or no limitations in the remaining domains and, thus, that plaintiff does not have an impairment or combination of impairments that functionally equals the listings. (R. 16-26).

Plaintiff contends that the ALJ committed legal error at step three of the evaluation process by failing to find that his impairments medically equal Listing 111.03, the listing for nonconvulsive epilepsy. (Plaintiff's brief, Doc. # 10, pp. 3-5). The Commissioner's regulations provide that, if a claimant has a combination of impairments, no one of which meets the requirements of a listed impairment, "we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairments are at

5

least of equal medical significance to those of a listed impairment, we will find that your combination of impairments is medically equivalent to that listing." 20 C.F.R. § 416.926(b)(3).[3] In reaching a conclusion regarding medical equivalence, the Commissioner considers all of the evidence in the record about the claimant's impairments and their effects and "also consider[s] the opinion given by one or more medical ... consultants." 20 C.F.R. § 416.926(c). However, "[f]or cases at the administrative law judge or Appeals Council level, the responsibility for deciding medical equivalence rests with the administrative law judge or Appeals Council." 20 C.F.R. § 416.926(e).[4]

---

[3] Plaintiff does not argue that two alternate methods for finding medical equivalence are applicable on the facts of this case and the court concludes that they are not. See 20 C.F.R. §§ 416.926(b)(1), (2).

[4] The Commissioner's policy regarding consideration of medical expert testimony on the issue of medical equivalence is further explained in Social Security Ruling 96-6p. The ruling provides, in relevant part:

> The administrative law judge or Appeals Council is responsible for deciding the ultimate legal question [of] whether a listing is met or equaled. As trier of the facts, an administrative law judge or the Appeals Council is not bound by a finding by a State agency medical or psychological consultant or other program physician or psychologist as to whether an individual's impairment(s) is equivalent in severity to any impairment in the Listing of Impairments. However, longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight.
>
> The signature of a State agency medical or psychological consultant on an SSA-831-U5 (Disability Determination and Transmittal Form) or SSA-832-U5 or SSA-833-U5 (Cessation or Continuance of Disability or Blindness) ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review. Other documents, including the Psychiatric Review Technique Form and various other documents on which medical and psychological consultants may record their findings, may also ensure that this opinion has been obtained at the first two levels of administrative review.
>
> When an administrative law judge or the Appeals Council finds that an individual's impairment(s) is not equivalent in severity to any listing, the requirement to receive expert

In his finding that plaintiff does not have an impairment that meets or medically equals one of the listings, the ALJ stated, "No treating or examining source has so concluded. In addition, I have examined the record, and I find that the evidence does not support such a conclusion." (R. 16, Finding No. 4). Plaintiff argues that "[t]he ALJ's purported rationale with respect to his medically equals finding simply ignores the testimony of Dr. Durham, who indicated through his testimony that the combination of JM's impairments medically equal Listing 111.03." (Plaintiff's brief, Doc. # 10, p. 5)(emphasis in original). Plaintiff asks that the court credit Dr. Durham's testimony "and determine that the combination of JM's

---

opinion evidence into the record may be satisfied by any of the foregoing documents signed by a State agency medical or psychological consultant. However, an administrative law judge and the Appeals Council must obtain an updated medical opinion from a medical expert in the following circumstances:

* When no additional medical evidence is received, but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or

* When additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

When an updated medical judgment as to medical equivalence is required at the administrative law judge level in either of the circumstances above, the administrative law judge must call on a medical expert. When an updated medical judgment as to medical equivalence is required at the Appeals Council level in either of the circumstances above, the Appeals Council must call on the services of its medical support staff.

SSR 96-6p, Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians and Psychologists at the Administrative Law Judge and Appeals Council, 1996 WL 374180 at **3-4 (footnote omitted). In this case, Dr. Frank J. Nuckols rendered an expert opinion regarding medical equivalence at the initial administrative level. Dr. Nuckols concluded that plaintiff has impairments of seizures, headaches, and "history of ADHD" and that, while his impairment or combination of impairments is "severe," it "does not meet, medically equal, or functionally equal the listings." (Exhibit 7F, R. 259-64).

impairments medically equal Listing 111.03[.]" (Id.).

As noted above, the ALJ found that plaintiff has a severe impairment of "seizure disorder." (R. 16). A child with an established seizure disorder meets the listing for nonconvulsive epilepsy when the evidence demonstrates "the occurrence of more than one minor motor seizure per week, with alteration of awareness or loss of consciousness, despite at least three months of prescribed treatment." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 111.03. A combination of impairments medically equals a listing if "the findings related to [the claimant's] impairments are at least of equal medical significance to those of a listed impairment." 20 C.F.R. §416.926(b)(3).

Plaintiff's mother testified at the hearing. After listening to her testimony and asking additional questions, Dr. Durham testified as follows:

> Q [by ALJ]   . . . Now, in your opinion, do either individually or in combination, do [plaintiff's impairments] meet or equal a listing?
>
> A   I think that – I'm having difficulty saying that they meet a listing but I think that *we have to give some consideration of equaling a listing with a combination of these staring episodes and the frequency of the headaches* and those being, to me, the primary complaints at this time, primary diagnoses at this time.
>
> Q   And what listing do you feel possibly could be equaled?
>
> A   Well, the 111.03, non-convulsive epilepsy, is – requires at least one minor motor seizure per week.  He doesn't really do that but he may have a couple a month we were told.  The headaches, there's no specific listing for headache but I, with the addition of that diagnosis, I would feel like 111.03 has to be –[5]

---

[5] In quoting Dr. Durham's testimony in his brief, plaintiff's counsel concluded the quotation at this point, emphasizing with bold type and underlining the phrase, "I would feel like 111.03 has to be – [.]"

    Q  Okay.

    A  – *considered*.

(R. 53)(emphasis added). After he elicited Dr. Durham's testimony on plaintiff's level of limitation in each of the six domains, the ALJ offered plaintiff's attorney[6] an opportunity to question the witness. Counsel responded, "I have no questions for the doctor." (R. 54).

As plaintiff argues, the ALJ notes that Dr. Durham's testimony that plaintiff does not meet a listing but fails to reference Dr. Durham's testimony on the issue of medical equivalence. (See Plaintiff's reply brief, p. 2; ALJ decision at R. 19). Additionally, the ALJ's explanation of his analysis of medical equivalence is cursory. (See R. 16, Finding No. 4). However, the ALJ concludes expressly that plaintiff does not have "an impairment *or combination of impairments* that meets *or medically equals* one of the listed impairments[.]" (R. 16)(emphasis added). See Wilson v. Barnhart, 284 F.3d 1219, 1224-25 (11th Cir. 2002)(holding that a substantially identical statement in an ALJ's decision demonstrated that the ALJ considered the claimant's impairments in combination). Additionally, as set forth above, Dr. Durham's testimony about medical equivalence was elicited by the ALJ. (See R. 53-54). While a more detailed explanation of his analysis would have been preferable, the court cannot conclude that the ALJ failed to consider whether plaintiff's combination of

---

(Plaintiff's brief, p. 4). The quotation is accurate, technically, but plaintiff's counsel's omission of the concluding word of Dr. Durham's sentence – "considered" – gives the wrong impression. As plaintiff counsel concedes in reply, after his omission was pointed out by the Commissioner (see Commissioner's brief, pp. 7-8), "the totality of Dr. Durham's testimony speaks for itself." (Plaintiff's reply brief, p. 2).

    [6] Plaintiff's counsel of record in this appeal did not represent him at the administrative hearing. (See R. 28, 30).

impairments medically equals a listing.[7]

Further, Dr. Durham's testimony that Listing 111.03 "has to be . . . considered" was based, in part, on testimony from plaintiff's mother about the frequency of plaintiff's headaches. (See R. 53)("[W]e have to give some consideration of equaling [Listing 111.03] with a combination of these staring episodes and the frequency of the headaches[.]").[8] At the hearing, plaintiff's mother first testified, in response to a question from plaintiff's counsel about how often plaintiff has headaches, that plaintiff has "headaches every blue moon, every now and then but it's not regular." (R. 42-43). Plaintiff's counsel then asked how often plaintiff has migraines; plaintiff's mother testified that he has "migraines just about like

---

[7] It is not clear to the court whether plaintiff contends that the ALJ failed to consider medical equivalence at step three of his analysis or only that the ALJ erred by "ignor[ing] the testimony provided by Dr. Durham. (See Plaintiff's brief, p. 5)(describing the "three-tiered approach" to analysis at step three, then arguing, "It is clear herein that the ALJ failed to correctly apply such approach when he ignored the testimony provided by Dr. Durham in which he later chose to assign substantial weight thereto.").

[8] Dr. Durham did not testify that plaintiff's condition medically equals Listing 111.03. In his reply brief, plaintiff points to the Commissioner's *Hearings, Appeals and Litigation Law Manual* ("HALLEX"), paragraphs I-2-5-39 and I-2-6-70 which require, respectively, that an ALJ elicit an opinion from the medical expert about whether the claimant's impairment(s) medically equal(s) a listing and that an ALJ follow up with more specific questions if a medical expert has given ambiguous or overly technical testimony. Plaintiff argues that – if Dr. Durham's testimony was ambiguous – it was the ALJ's duty to resolve the ambiguity. (Plaintiff's reply brief, p. 2). However, HALLEX provisions do not carry the force of law and violation of a HALLEX provision does not provide independent grounds for reversing the Commissioner's decision. See Childs v. Astrue, 2009 WL 902614, 5 -6 (M.D.Ala. Mar. 31, 2009)(discussing cases). Even assuming the ALJ violated HALLEX provisions and that those provisions were enforceable judicially against the Commissioner, reversal and remand would not be warranted absent a showing of prejudice arising from the violation. See Shave v. Apfel, 238 F.3d 592, 596-97 (5th Cir.2001)(to warrant relief from an ALJ's decision due to the ALJ's failure to follow a HALLEX provision, a showing of prejudice is required). Further questioning of the medical expert on the issue of medical equivalence may have resulted in a more clear record. However, plaintiff has not demonstrated that further questioning by the ALJ would have yielded a response from Dr. Durham more favorable to the plaintiff. Additionally, after he concluded his questioning of Dr. Durham, the ALJ offered plaintiff's counsel an opportunity to question the witness; plaintiff's counsel declined to do so. (R. 54). In view of plaintiff's rejection of the opportunity to elicit further testimony from Dr. Durham, the court cannot conclude that she has demonstrated prejudice arising from the ALJ's failure to ask additional questions.

every once in awhile, not regular, you know." (R. 43).   However, when the medical expert asked plaintiff's mother about plaintiff's medication for migraines, she responded that plaintiff's Maxalt is "as needed" and that plaintiff takes it twice each day. (R. 50). She stated, "[J.M.] takes it twice a day because I even take his pills to school.  He has headaches in school." (Id.).  She further testified as follows:

> ME [Medical Expert]: He takes it if he has a headache?
>
> WTN: He has it – when he has a headache, I give him one.
>
> ME: And you have to do that twice every day?
>
> WTN: Yes.  I do.  When he say his head hurts, I give him one.
>
> ME: But, I mean, five days a week?
>
> WTN: No, sir.  I give him two, twice out of week, only on the weekend or either through the weekday when he go to school.
>
> ATTY: How many pills –
>
> ME: I don't understand that.
>
> WTN: One pill on a Monday and I give him on the weekend.  That's twice a day out of a week.
>
> ATTY: So two pills a week?
>
> WTN: Yes, two pills a week.
>
> ME: And that's because he's got a bad headache?
>
> WTN: He have bad headache.

(R. 50-51). Thus, plaintiff's mother's testimony regarding the frequency of plaintiff's

headaches ranged from "every blue moon" or "every once in a while" and "not regular" to twice each day to twice each week – once on Monday and once on the weekend. (R. 42-43, 50-51).

Review of the ALJ's decision would be simpler if the ALJ had chosen to explain his medical equivalence analysis in detail. However, upon consideration of the ALJ's decision as a whole, it is apparent that the ALJ did not credit the portion of the headache testimony indicating that plaintiff has bad headaches frequently. After evaluating the evidence, the ALJ found plaintiff's headaches to be a "non severe impairment." (R. 16). Plaintiff does not challenge this finding, and the court finds that it is supported by substantial evidence of record. (See R. 42-43 (plaintiff's mother's testimony that plaintiff has headaches "every blue moon," "every once in a while, not regular"); R. 196-206 (generally evidencing improvement in plaintiff's headache symptoms once plaintiff increased his Topamax from "QHS" [at bedtime] to "BID" [twice daily]); R. 196-97 (report in December 2005 of occasional mild headache after Topamax dosage increased in July 2005);[9] R. 260-64 (May 2006 conclusion of non-examining agency physician that plaintiff's headaches are "not severe"); R. 275-76 (on initial intake in December 2006, impressions of neurologist Dr. Sanchez included

---

[9] The record demonstrates that plaintiff's doctor ordered an increase in plaintiff's Topamax dosage to twice daily previously but that plaintiff's reported frequency of taking the medication in subsequent visits remained "QHS." (See R. 202 (Dr. Corbier's April 2004 note that "we will need to increase Topamax to 25 mg b.i.d." which "should help with headaches"); R. 198 (Dr. Corbier's note at the follow up visit in September 2004 that he "is currently taking Topamax 25 mg "q hs"); R. 197 (after complaints of increasing headaches in July 2005, again increasing frequency to 25 mg BID), R. 196 (reporting only occasional mild headaches on twice daily dosage), and R. 273 (in December 2006 appointment with Dr. Leuschke for evaluation of sleep disturbance, reporting current medication of Topamax "two at bedtime").

"Migraine" based, apparently, on the report of plaintiff's mother; Dr. Sanchez requested that plaintiff's mother keep a headache diary but there is no such diary included in the transcript and no later treatment notes from Dr. Sanchez); R. 302 (May 2008 note that plaintiff had not seen Dr. Sanchez since 2007); R. 303 (plaintiff's mother's April 2008 report to behavioral medicine clinic that plaintiff last saw the neurologist about one year previously).  The ALJ was required to consider the effects of plaintiff's non severe headache impairment in reaching his finding on medical equivalence, and his finding indicates that he considered plaintiff's impairments in combination. (See R. 16, Finding No. 4; see also Wilson, 284 F.3d at 1224-25).  However, the ALJ's determination that plaintiff's headaches are a "non severe impairment" means, by definition, that plaintiff's headaches cause no more than minimal functional limitations.  See 20 C.F.R. § 416.924(c).  The ALJ observed, "In terms of the claimant's migraine headaches, he uses Maxalt to control them" and "[h]is teacher[]s were unaware of the problem." (R. 17; see also Exhibits 1E (questionnaire completed by plaintiff's third grade teacher in November 2004) and 8E (questionnaire completed by plaintiff's fourth grade teacher during or after March 2006)).

In short, the decision as a whole makes clear that the ALJ did not find plaintiff's headaches to impose functional limitations of sufficient severity – when considered in combination with his other impairments – to medically equal the listings. Dr. Durham's testimony that, based on the frequency of plaintiff's headaches, Listing 111.03 should be considered does not impeach the ALJ's step three conclusion that plaintiff does not have an

impairment or combination of impairments that medically equals one of the listed impairments.

## CONCLUSION

Upon consideration of the record as a whole, the court concludes that the decision of the Commissioner is supported by substantial evidence and proper application of the law. Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the decision be AFFIRMED.

The Clerk of the Court is ORDERED to file the Recommendation of the Magistrate Judge and to serve a copy on the parties to this action. The parties are DIRECTED to file any objections to this Recommendation on or before November 2, 2011. Any objections filed must identify specifically the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. Resolution Trust Co. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989).

DONE, this 19th day of October, 2011.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE